| | | |
|---|---|---|
| **JELAYNE BAKER and**<br>**CHRISTOPHER BAKER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **NO. 1:26-cv-00034** |
| | ) | |
| **v.** | ) | **JUDGE CAMPBELL** |
| | ) | **MAGISTRATE JUDGE HOLMES** |
| **THE HONORABLE JUDGE J. LEE** | ) | |
| **BAILEY, III,** *in his official capacity,* **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

Plaintiffs Jelayne Baker ("Plaintiff J.B.") and Christopher Baker ("Plaintiff C.B."), residents of Glendale, Arizona, filed this pro se action under 42 U.S.C. § 1983, alleging violations of their civil rights. (Doc. No. 1).

## I. PROCEDURAL HISTORY

When Plaintiffs commenced this action on April 13, 2026, the Complaint contained only Plaintiff J.B.'s signature. (Doc. No. 1 at PageID# 13). Plaintiff J.B. also filed an Application for Leave to Proceed In Forma Pauperis ("IFP Application") (Doc. No. 2), and Plaintiffs together filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Motion") (Doc. No. 4).

On April 14, 2026, the Court denied Plaintiff J.B.'s IFP Application (Doc. No. 2) without prejudice. (Doc. No. 5 at PageID# 167). The Court ordered Plaintiff J.B. to submit an Amended IFP Application and ordered Plaintiff C.B. to file either an IFP application or his portion of the civil filing fee as well as a signed Complaint. (*Id.* at PageID# 167-68). The Court informed Plaintiffs that the filing fee must be resolved prior to the Court considering the TRO Motion. (*Id.* at PageID# 168).

On April 15, 2026, Plaintiff J.B. submitted a timely Amended IFP Application (Doc. No. 6), which the Court denied (Doc. No. 12). The Court ordered Plaintiff J.B. to submit the full civil filing fee and reminded Plaintiff C.B. to sign the Complaint and either pay his portion of the civil filing fee or submit an IFP application. (Doc. No. 12 at PageID# 182-83).

The Court ordered both Plaintiff J.B. and Plaintiff C.B. to provide their current mailing address(es) to the Court after the April 14, 2026 Order sent to Plaintiffs was returned as undeliverable. (*Id.* at PageID# 183). The Court ordered Plaintiffs to comply with its Order within 30 days of the date the Order was entered on the docket. (*Id.*).

Plaintiffs then filed a timely and properly signed Amended Complaint (Doc. No. 13) and provided the Court with their current mailing address (Doc. No. 14). Plaintiff C.B. timely filed an IFP Application (Doc. No. 17). Rather than paying her portion of the civil filing fee, Plaintiff J.B. filed a Second Amended IFP Application (Doc. No. 16).

That application is now pending before the Court as well as Plaintiffs' TRO Motion (Doc. No. 4), Plaintiffs' Notice of Change of Address and Motion for Protective Order ("Motion for Protective Order") (Doc. No. 14), Plaintiffs' Expedited Motion for Reconsideration (Doc. No. 15), Plaintiff C.B.'s IFP Application (Doc. No. 17), and Plaintiffs' Emergency Motion for Status Regarding Pending Emergency Petition for Injunctive Relief and Expedited Motion for Reconsideration ("Motion for Status") (Doc. No. 20).

## II. MOTION FOR STATUS (DOC. NO. 20)

In Plaintiffs' Motion for Status, they ask the Court for a status update regarding their Expedited Motion for Reconsideration, their IFP Applications "and related filings," and the Emergency Petition for Injunctive Relief, and they inquire as to whether anything additional is required of them. (Doc. No. 20 at PageID# 235). Plaintiffs request that this Court review the pending submissions immediately "due to the ongoing nature of the alleged constitutional violations and the

imminent state court proceedings." (*Id.*). Plaintiffs' Motion for Status (Doc. No. 20) will be granted, and the Court will rule on the pending motions herein.

### III. MOTION FOR RECONSIDERATION (DOC. NO. 15)

Citing Federal Rule of Civil Procedure 60(b)(1), Plaintiffs have filed a Motion for Reconsideration, asking the Court to vacate its denial of Plaintiff J.B.'s IFP Application (Doc. No. 6), grant Plaintiff J.B. leave to proceed in forma pauperis, grant Plaintiff C.B.'s IFP Application (Doc. No. 17), take notice of Plaintiffs' new address, grant Plaintiffs' Motion for Protective Order (Doc. No. 14), address the TRO Motion (Doc. No. 4), and grant any further relief the Court deems necessary. (Doc. No. 15 at PageID# 206).

Although Plaintiffs request relief under Federal Rule of Civil Procedure 60(b)(1), the appropriate rule on which Plaintiffs should rely is Federal Rule of Civil Procedure 54. The Order at issue is not a final judgment, which is required for Rule 60. Rule 54 provides the Court with broad discretion to revise interlocutory orders under certain circumstances. Fed. R. Civ. P. 54(b); *see Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). "This authority allows district courts 'to afford such relief from [interlocutory orders] as justice requires.'" *Id.* (quoting *Citibank N.A. v. Fed. Deposit Ins. Corp.*, 857 F. Supp. 976, 981 (D.D.C. 1994)). Reasons for reconsidering interlocutory orders include "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 F. App'x at 959. "This standard obviously vests significant discretion in district courts." *Id.* at 959 n.7.

In support of their motion, Plaintiffs contend that Plaintiff J.B. misunderstood section 10 of the Amended IFP Application (Doc. No. 6), which asks, "Have you spent – or will you be spending – any money for expenses or attorney fees in conjunction with this lawsuit?". (Doc. No. 15 at PageID# 204). Plaintiff responded with, "$20,000." (Doc. No. 6 at PageID# 173). Plaintiffs clarify that her

3

answer "encompass[es] the entire history of related litigation that gave rise to this federal case." (Doc. No. 15 at PageID# 204). Plaintiffs say they, instead, will not be spending any money on attorney fees in this case due to their financial situation as Plaintiff J.B. was laid off from her job in April of 2026, she is currently unemployed, and Plaintiffs have exhausted their retirement funds to cover past legal fees and living expenses. (*Id.*).

Plaintiffs also inform the Court that there was a delay in providing the Court with their new address because they "had to take necessary steps to obtain the proper documentation required to secure an alternative, safe mailing address that they could provide to the Court without endangering their family." (*Id.* at PageID# 205).

Lastly, Plaintiffs inform the Court that Plaintiff C.B. never filed his own IFP Application due to a misunderstanding by Plaintiff J.B. upon the commencement of the case. (*Id.*). Plaintiff J.B. mistakenly believed that they only needed to file one IFP application since she and Plaintiff C.B. are married. (*Id.*).

Plaintiffs' explanations are well taken. Therefore, their Expedited Motion for Reconsideration (Doc. No. 15) will be granted in part to the extent that the Court **VACATES** its Order of May 21, 2026 as to Plaintiff J.B. The Court takes judicial notice of Plaintiffs' new address as submitted within the Motion for Reconsideration (Doc. No. 15 at PageID# 205) and Plaintiffs' Notice of Change of Address (Doc. No. 14). The Clerk is **DIRECTED** to update the docket to reflect the new address. Plaintiffs' Motion will be denied in part as to the Motion for Protective Order (Doc. No. 14) for the reasons set forth in Section VI. below.

### IV. FILING FEE

The Court may authorize a person to file a civil suit without paying the filing fee. 28 U.S.C. § 1915(a). Section 1915 is intended to insure that indigent persons have equal access to the judicial system by allowing them to proceed without having to advance the fees and costs associated with

litigation. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989); *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 342 (1948). Pauper status does not require absolute destitution. *Adkins*, 335 U.S. at 339; *Foster v. Cuyahoga Dep't of Health and Human Servs.*, 21 F. App'x 239, 240 (6th Cir. 2001). Rather, the relevant question is "whether the court costs can be paid without undue hardship." *Foster*, 21 F. App'x at 240. Proceeding in forma pauperis is a privilege, not a right, and "[t]he decision whether to permit a litigant to proceed [in forma pauperis] is within the Court's discretion." *Id*.

Plaintiffs are a married couple and each seek pauper status. (*See* Doc. Nos. 16 & 17). They both report having no income at this time and having around $60.00 in cash. (Doc. No. 16 at PageID# 221-22; Doc. No. 17 at PageID# 226-27). Plaintiffs also report combined monthly expenses of $894.00. (Doc. No. 16 at PageID# 224-25; Doc. No. 17 at PageID# 229-30). Because Plaintiffs' IFP Applications reflect that they lack sufficient financial resources to pay the full filing fee without undue hardship, Plaintiff J.B.'s Second Amended IFP Application (Doc. No. 16) and Plaintiff C.B.'s IFP Application (Doc. No. 17) will be granted.

## V. INITIAL REVIEW

### A. Legal Standard

When a plaintiff is proceeding in forma pauperis, the Court must conduct an initial review and dismiss the in forma pauperis complaint if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also Ongori v. Hawkins*, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e)."). Review for whether a complaint states a claim upon which relief may be granted asks whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although pro se pleadings must be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the plaintiff must still "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, upon "view[ing] the complaint in the light most favorable to the plaintiff[.]" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009).

**B. Alleged Facts**

The below facts are presumed true for purposes of the required screening of the Amended Complaint.

In August of 2022, Defendant Honorable Judge J. Lee Bailey, III ("Defendant Judge Bailey") granted temporary custody of Plaintiffs' children to the paternal grandmother. (Doc. No. 13 at PageID# 187). Defendant Judge Bailey refused to hear from Plaintiff C.B. at the hearing due to him arriving late, although Plaintiff C.B. maintains an incorrect hearing time was listed on the summons. (*Id.*).

Plaintiffs filed a motion to dismiss the temporary custody order, for which there was a hearing in October of 2024. (*Id.*). Defendant Judge Bailey restored sole custody of the children to Plaintiff C.B. (*Id.*). The paternal grandmother appealed the dismissal of the temporary custody order in November of 2024, and Defendant Judge Bailey has yet to rule on the appeal, as well as multiple other motions Plaintiffs have filed in the same case. (*Id.* at PageID# 188).

Jessica Francis, the children's aunt, filed a visitation petition, which Plaintiffs moved to dismiss. (*Id.*). Defendant Judge Bailey has yet to rule on that motion as well. (*Id.*). Defendant Judge Bailey has failed to address other problematic conduct by Ms. Francis concerning her attempts at filing an Emergency Ex Parte Petition in another court. (*Id.*).

In March of 2025, Defendant Judge Bailey entered a visitation order despite Plaintiffs' objections. (*Id.*). Defendant Judge Bailey also allowed the guardian ad litem, Jessica Elam, to

6

withdraw from the case and be replaced by Defendant Stacie Odeneal ("Defendant Odeneal"). (*Id.*). Ms. Elam informed Defendant Odeneal about the facts of the case rather than Defendant Judge Bailey appointing a new guardian ad litem who could conduct their own unbiased review of the case. (*Id.* at PageID# 188-89).

In June of 2025, Defendant Judge Bailey ordered the removal of one of the children from Plaintiffs' care after a hearing that was held for which Plaintiffs had no opportunity to prepare or present physical evidence. (*Id.* at PageID# 189).

In July of 2025, Defendant Odeneal posted case information on social media, and an unidentified individual or entity determined that she violated ethical rules by doing so. (*Id.*).[1]

An adjudication hearing scheduled for August of 2025 was cancelled due to Defendant Odeneal's alleged illness, but Plaintiffs observed social media posts of Defendant Odeneal showing she was "at the Tennessee River, demonstrating the falsity of her claim of illness . . . ." (*Id.*). The hearing was rescheduled for September of 2025, within which Defendant Judge Bailey "demonstrated clear and explicit bias" by praising the paternal grandmother for her care of the children; Plaintiffs were unable to present evidence. (*Id.*). The child was returned to parental care. (*Id.*).

Defendant Odeneal filed a Dependency and Neglect petition in October of 2025, and both Plaintiffs' children were removed from the home. (*Id.* at PageID# 190). Plaintiffs have not been able to see the children since their removal. (*Id.*). Since January of 2026, Plaintiff J.B. has had unsuccessful attempts at visitation with the children due to communication issues with visitation supervisors. (*Id.*).

In November of 2025, a hearing was held of which Plaintiffs were not given adequate notice, and they were unable to meaningfully prepare for it as a result. (*Id.*).

---

[1]     Plaintiffs state they filed a complaint as to Defendant Odeneal's conduct, and "the reviewing body" determined she did violate ethical rules. (Doc. No. 13 at PageID# 189). There is no further specification of the "reviewing body" or with whom the complaint was filed. (*Id.*).

An adjudication hearing was set for April of 2026. (*Id.*). The hearing was stayed because Defendant Odeneal filed a Petition to Terminate Parental Rights in a different county. (*Id.* at PageID# 191). Plaintiffs argue this "last-minute filing in another venue was a calculated, bad-faith tactical maneuver designed for the sole purpose of divesting the Juvenile Court of jurisdiction . . . thereby preventing Plaintiffs from ever having their day in court . . . ." (*Id.*).

Defendant Judge Bailey's rulings and the various court proceedings all contributed to employment difficulties for Plaintiff J.B. and emotional distress for both Plaintiffs. (*Id.*). Due to Defendant Judge Bailey's bias and lack of ruling on pending motions, "which emboldened the opposing parties," Plaintiff C.B. was violently attacked at his home by an opposing party's spouse. (*Id.* at PageID# 192).

Plaintiffs request this Court issue an Emergency Temporary Restraining Order and Preliminary Injunction "enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them, from taking any further action in the state court proceedings . . . pending a final judgment in this action." (*Id.* at PageID# 195). Plaintiffs also request the Court issue a declaratory judgment that "the Defendants' actions, policies, and practices as described [in the Amended Complaint] have violated Plaintiffs' rights under the First and Fourteenth Amendments . . . ." (*Id.*). Plaintiffs request the Court award reasonable attorney fees and costs, as well as other relief the Court may deem just and proper. (*Id.* at PageID# 196).

**C. Analysis**

Plaintiffs bring this case under 42 U.S.C. § 1983, alleging Defendants violated their civil rights while acting under color of state law. (Doc. No. 13 at PageID# 193-95). Specifically, Plaintiffs allege Defendants deprived Plaintiffs of their right to procedural due process by "systematically and intentionally denying them any meaningful notice and opportunity to be heard before a neutral and detached magistrate;" "engaging in a pattern of procedural manipulation to prevent any evidentiary

hearing on the merits from ever taking place;" and "failing to provide a fair and unbiased process for the adjudication of their parental rights." (*Id.* at PageID# 193). Plaintiffs also allege Defendants violated their substantive due process rights by intruding into the "sanctity of [their] family." (*Id.* at PageID# 193-94). Plaintiffs allege Defendants violated their First Amendment rights by retaliating against Plaintiffs for filing complaints regarding misconduct by Defendant Odeneal and other officials involved in their case, and this chilled Plaintiffs' exercise of their First Amendment rights. (*Id.* at PageID# 194). Lastly, Plaintiffs allege Defendants conspired to deprive Plaintiffs of their constitutional rights under the First and Fourteenth Amendments. (*Id.* at PageID# 195).

42 U.S.C. § 1983 provides a cause of action against all people who, under color of state law, deprive any person of any right secured by the United States Constitution or federal law. To state a colorable Section 1983 claim, a plaintiff must allege: (1) "the deprivation of a right secured by the Constitution or laws of the United States" and (2) "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (quoting *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995)). If either element is absent, the Section 1983 claim has not been properly pleaded. *Kissinger v. Mahoning Cnty. Republican Party*, 677 F. Supp. 3d 716, 724 (N.D. Ohio June 16, 2023) (citing *Lausin v. Bishko*, 727 F. Supp. 2d 610, 625 (N.D. Ohio July 15, 2010)).

1. The Honorable Judge J. Lee Bailey, III

Plaintiffs sue Defendant Judge Bailey in his official capacity under 42 U.S.C. § 1983, alleging Defendant Judge Bailey violated their civil rights while acting under color of state law. (Doc. No. 13 at PageID# 186, 193-95). Plaintiffs seek injunctive and declaratory relief against him. (*Id.* at PageID# 195-96).

To the extent that Defendant Judge Bailey is sued in his official capacity, the Eleventh Amendment controls. Under the Eleventh Amendment, the State, state agencies, and state officers are

immune from lawsuits seeking injunctive and declaratory relief in their official capacities, *Morgan v. Bd. of Pro. Responsibility of the Sup. Ct. of Tenn.*, 63 F.4th 510, 515 (6th Cir. 2023), with the exceptions of waiver of immunity by the State or Congressional abrogation. *Vick v. Core Civic*, No. 1:18-cv-00003, 2020 WL 1670742, at *2 (M.D. Tenn. Mar. 6, 2020) (citing *Hoffman v. Conn. Dep't of Income Maint.*, 492 U.S. 96, 101 (1989); *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984)). Because Defendant Judge Bailey's occupation is judicial in nature, he "stand[s] in the shoes of the entity [he] represent[s]," that being the courts. *S.J. v. Hamilton Cnty., Ohio*, 374 F.3d 416, 420 (6th Cir. 2004) (quoting *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent.")). Because "all parts of the State court system" are treated as "an arm of the State," *Gaines v. Cross*, 771 F. Supp. 3d 982, 991 (S.D. Ohio Mar. 18, 2025), the immunity provided by the Eleventh Amendment applies to Defendant Judge Bailey as an arm of the State. Furthermore, neither of the first two previously mentioned exceptions apply as Tennessee has not waived its sovereign immunity, Tenn. Code Ann. § 20-13-102(a), and 42 U.S.C. § 1983 does not abrogate Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 338-45 (1979); *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

However, of present concern is the *Ex parte Young* exception. "The *Ex parte Young* doctrine operates as an exception to the general rule of sovereign immunity . . . Under *Ex parte Young*, suits against state officials seeking equitable relief for ongoing violations of federal law are not barred by the Eleventh Amendment." *Mich. Bell Telephone Co. v. Climax Telephone Co.*, 202 F.3d 862, 867 (6th Cir. 2000) (quoting *Ex parte Young*, 209 U.S. 123, 159-60 (1908)).

Plaintiffs argue that "[t]he state court proceedings have been characterized by a pattern of bad faith, harassment, and procedural manipulation[,]" which has been demonstrated through a years-long pattern that is causing "immediate and irreparable harm to the parent-child relationship[.]" (Doc. No. 13 at PageID# 185). The pattern Plaintiffs refer to consists of:

10

> Granting relief based on petitions filed by individuals without legal standing[;] [c]ondoning and failing to address blatant "judge shopping" by opposing parties[;] [s]ystematically denying and continuing hearings based on false pretenses, such as the GAL's feigned illness[;] [r]efusing for years to rule on Plaintiffs' dispositive motions regarding jurisdiction, standing, and defective service[;] [h]olding hearings with less than 24 hours' notice, making a meaningful defense impossible[;] [and] [c]ulminating in the GAL's calculated, last-minute filing of a termination petition in a different county to obstruct a scheduled merits hearing.

(*Id.* at PageID# 192). Plaintiffs seek equitable relief, asking the Court to "enjoin [Defendant] Judge Bailey . . . from proceeding with the state court termination and dependency actions, thereby preserving Plaintiffs' constitutional rights pending a determination by this Court." *(Id.* at PageID# 186).

Viewing the Amended Complaint in the light most favorable to the non-moving party, the Court concludes that it has subject matter jurisdiction on the basis that Plaintiffs have pleaded facts establishing a form of requested relief that is available under *Ex parte Young*.

However, the analysis does not end here. The United States Supreme Court in *Younger v. Harris* held that principles of comity, equity, and federalism require federal courts to abstain from exercising jurisdiction over cases within which the plaintiff asks the Court to enjoin state criminal proceedings. 401 U.S. 37, 56 (1971). Although *Younger* involved state criminal proceedings, abstention also applies to civil enforcement proceedings that are "akin to a criminal prosecution" in "important respects." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79 (2013) (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)). In the civil context, abstention is an exception to the general rule that "federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant[.]" *Sprint*, 571 U.S. at 73. The *Younger* doctrine "reflects a strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff." *Moore v. Sims*, 442 U.S. 415, 423 (1979).

A court must abstain from interfering with state judicial process when there is (1) an ongoing state criminal prosecution; (2) certain state civil proceedings "that are akin to criminal prosecutions;"

11

or (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint*, 571 U.S. at 72-73. The courts must next consider and abstain from exercising their jurisdiction if (1) there is an ongoing state proceeding, (2) that implicates important state interests, and (3) that provides an adequate opportunity to raise any relevant federal questions. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

The district court in *Alexander v. Morgan*, a federal question case concerning a child custody and child support proceeding, decided the state proceeding at issue was neither a criminal prosecution nor did it "fit within the category reserved for unique orders in furtherance of state courts' ability to perform their judicial function." 353 F. Supp. 3d 622, 626-27 (W.D. Ky. Nov. 5, 2018). Instead, the court decided the case was akin to a criminal prosecution in that a hearing was held before a judge, evidence was introduced, arguments were made, a party intervened, and the court ordered money be paid, which is all similar to criminal prosecutions. *Id.* at 627. The court further held the state proceeding was pending and there existed an important state interest upon which the federal court should not impose. *Id*. at 628-29. As a result, the court abstained pursuant to *Younger*. *Id.* at 631.

The state court proceeding at issue here is neither an ongoing criminal prosecution nor within "the category reserved for unique orders in furtherance of state courts' ability to perform their judicial function." *Alexander*, 353 F. Supp. 3d at 627. The Court is then left with the consideration of whether Plaintiffs' state civil proceeding at issue is akin to a criminal prosecution. "Indicia of these proceedings can include an investigation and formal complaint, the seriousness of consequences, the availability of a hearing, the introduction of witnesses or evidence, the initiation or involvement of state agencies, and the purpose of the hearing in disciplining, punishing or adjudicating." *Id*. (citing *Sprint*, 571 U.S. at 81). "The crucial factors, however, are the state's involvement and the importance of the state's interest." *Id.* at 627 (citing *Trainor v. Hernandez*, 431 U.S. 434 (1977)). Just as the court

in *Alexander* found the state civil proceeding akin to a criminal prosecution, the Court finds the same to be true here.

In regard to the *Middlesex* factors, if the state court proceedings at issue are indeed ongoing, *Younger* applies and this case is subject to dismissal. Plaintiffs inform the Court in the Amended Complaint that the state court proceedings are ongoing, as they request the Court "enjoin [Defendants] from proceeding with the state court termination and dependency actions . . . ." (Doc. No. 13 at PageID# 186).

Considering their pro se status, Plaintiffs will be ordered to show cause no later than 30 days after the entry of this Order why this case should not be dismissed under *Younger*. Any further analysis as to *Younger* is delayed unless and until Plaintiffs provide the above information to the Court.

2. Stacie Odeneal

For Plaintiffs to successfully assert 42 U.S.C. § 1983 claims against Defendant Odeneal, two elements must be present: (1) "the deprivation of a right secured by the Constitution or laws of the United States" and (2) a person acting under color of state law must have caused the deprivation. *Tahfs*, 316 F.3d at 590 (quoting *Ellison*, 48 F.3d at 194). Otherwise, the Section 1983 claim has not been properly pleaded. *Kissinger*, 677 F. Supp. 3d at 724 (citing *Lausin*, 727 F. Supp. 2d at 625).

A guardian ad litem – someone appointed by a court to represent another individual – is not a state actor, although appointed by a court, because she represents the individual's best interests, not the state's best interests. *Bracey v. Barbour*, No. 3:12-cv-629, 2012 WL 2395171, at *8 (M.D. Tenn. June 25, 2012) (citing *Long v. Pend Oreille Cnty. Sheriff's Dep't*, 385 F. App'x 641, 642 (9th Cir. 2010) (holding that a guardian ad litem was not a state actor for the purposes of Section 1983)) (collecting cases). Defendant Odeneal is not a state actor under 42 U.S.C. § 1983. Plaintiffs' 42 U.S.C. § 1983 claims against Defendant Odeneal fail and will therefore be dismissed with prejudice.

13

3. <u>The Tennessee Department of Children's Services</u>

The Court now moves to Plaintiffs' claims against TDCS. The Eleventh Amendment bars lawsuits against a state, as well as its agencies or departments, unless either the state has waived its immunity or Congress has abrogated it. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). The sovereign immunity protected by the Eleventh Amendment extends to claims for injunctive relief and other forms of equitable relief. *Lawson v. Shelby Cnty., Tenn.*, 211 F.3d 331, 335 (6th Cir. 2000) ("[T]he [Eleventh] Amendment prohibits suits against a 'state' in federal court whether for injunctive, declaratory or monetary relief."). Because TDCS is an agency of the State of Tennessee, it is entitled to Eleventh Amendment immunity. *Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir. 1997); *Foster v. Walsh*, 864 F.2d 416, 418 (6th Cir. 1998).

Furthermore, neither of the two exceptions to a State's immunity – (1) the State's consent to suit, and (2) Congressional abrogation of a State's immunity – apply here as Tennessee has not waived its sovereign immunity, Tenn. Code Ann. § 20-13-102(a), and 42 U.S.C. § 1983 does not abrogate Eleventh Amendment immunity. *Quern*, 440 U.S. at 338-45; *Hafer*, 502 U.S. at 25. Consequently, TDCS may not be sued in this Court.

Plaintiffs' 42 U.S.C. § 1983 claims against TDCS will therefore be dismissed with prejudice.

**VI. MOTION FOR PROTECTIVE ORDER (DOC. NO. 14)**

Plaintiffs file their Motion for Protective Order under Federal Rule of Civil Procedure 26(c)(1) and ask that this Court enter a protective order to prevent the disclosure of their new mailing address. (Doc. No. 14 at PageID# 198). Plaintiffs state that they fear for their safety, and the safety of those with whom they live, for various reasons. Plaintiff C.B. was allegedly physically assaulted, and that incident was "connected to the parties in an underlying state court proceeding." (*Id.* at PageID# 199). Plaintiffs contend the legal system has been used by parties in the related state case as a tool for harassment, as they have engaged in "perpetual litigation" and have "fil[ed] frivolous motions and

14

meritless appeals with the apparent intent to harass, intimidate, and inflict financial and emotional distress upon the [Plaintiffs]." (*Id.*). Additionally, one of the parties in the underlying state court case repeatedly appeared at Plaintiff J.B.'s place of employment the day before each scheduled court hearing. (*Id.* at PageID# 200). As a result, Plaintiffs contend "[p]ublic disclosure of their Arizona address would not only compromise their physical safety but would also potentially expose their family members . . . to the same pattern of harassment and litigation abuse that destroyed the [Plaintiffs'] financial stability and forced them from their home." (*Id.* at PageID# 200-01).

Plaintiffs ask that this Court grant this Motion, seal their mailing address from the public record, order that their address information be filed under seal with the Court and made available only to Court personnel, prohibit the direct disclosure of their address to any opposing party, order that any service made upon any opposing party be made through counsel of record or through the Court's electronic filing system, and grant such other relief as the Court deems necessary. (*Id.* at PageID# 201-02).

Federal Rule of Civil Procedure 26(c)(1) provides "[a] party or any person from whom discovery is sought [with the option to] move for a protective order in the court where the action is pending . . . ." The order may be issued to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." *Id.* The Rule requires the motion to "include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." *Id.*

Plaintiffs have not satisfied this requirement. (*See* Doc. No. 14). In their Motion for Protective Order, there is no certification by Plaintiffs of any attempt made to confer with the opposing parties in order to try and resolve the issue. (*See id.*). They simply state their concerns. (*Id.* at PageID# 199-201).

Plaintiffs' Motion for Protective Order is insufficient even if construed as a Motion to Seal. Local Rule 5.03 requires that any party requesting that documents or portions of documents be sealed must comply with Local Rule 7.01. These rules require the movant to file a motion for leave to file the document(s) under seal and to demonstrate "compelling reasons to overcome the presumption that court records are open to the public . . . [and] must show that the sealing is narrowly tailored to the stated reasons by specifically analyzing in detail, document by document, the propriety of secrecy, providing supporting facts and legal authority." M.D. Tenn. R. 5.03(c). The requesting party "must also separately file a redacted version . . . [or], [i]f the filing of a redacted version is impracticable, the motion to seal must include an affirmative statement to that effect." M.D. Tenn. R. 5.03(e).

Plaintiffs have filed the required Motion (Doc. No. 14). However, even if Plaintiffs offered the most compelling reasons to justify the sealing of their mailing address, Plaintiffs failed to provide redacted versions of their submissions as required by Local Rule 5.03(e).

Therefore, Plaintiffs' Motion for Protective Order (Doc. No. 14) will be denied without prejudice.

## VII. TRO MOTION (DOC. NO. 4)

In this district, a movant seeking a temporary restraining order must comply with specific procedural requirements. First, "any request for a TRO" must be made by written motion "separate from the complaint." M.D. Tenn. L.R. 65.01(a). Second, because the movant bears the burden of justifying preliminary injunctive relief on the merits, *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 600 (6th Cir. 2014), a TRO motion must be accompanied by a memorandum of law and proposed order. M.D. Tenn. L.R. 65.01(b). Third, the motion for a TRO must be supported, at a minimum, by "an affidavit or a verified complaint." Fed. R. Civ. P. 65(b)(1)(A); M.D. Tenn. L.R. 65.01(b) (explaining that a motion for a TRO "must be accompanied by a separately filed affidavit or verified written complaint"). Finally, the moving party must certify in writing "any efforts made to give notice

16

and why it should not be required." Fed. R. Civ. P. 65(b)(1)(B); *see also* M.D. Tenn. L.R. 65.01(c) (requiring "strict compliance" with this notice provision by pro se moving parties).

Although Plaintiffs filed a TRO Motion separate from the verified Amended Complaint, provided a proposed order, and explained to the Court why notice should not be required[2], Plaintiffs failed to provide a memorandum of law. Thus, the TRO Motion is procedurally non-compliant, and, as a result, the TRO Motion (Doc. No. 4) will be denied without prejudice.

## VIII. CONCLUSION

Plaintiffs' Emergency Motion for Status Regarding Pending Emergency Petition for Injunctive Relief and Expedited Motion for Reconsideration (Doc. No. 20) is **GRANTED**.

Plaintiffs' Expedited Motion for Reconsideration (Doc. No. 15) is **GRANTED** in part and **DENIED** in part.

Plaintiff J.B.'s Second Amended IFP Application (Doc. No. 16) and Plaintiff C.B.'s IFP Application (Doc. No. 17) are **GRANTED**. The Clerk therefore is **DIRECTED** to file the Amended Complaint (Doc. No. 13) in forma pauperis. 28 U.S.C. § 1915(a).

Plaintiffs are **ORDERED TO SHOW CAUSE** why this case should not be dismissed under *Younger*. Plaintiffs must comply with this Order no later than **30 DAYS** of the entry of this Order.

Plaintiffs' 42 U.S.C. § 1983 claims against Defendant Stacie Odeneal and Defendant Tennessee Department of Children's Services are **DISMISSED** with prejudice.

Plaintiffs' Motion for Protective Order (Doc. No. 14) is **DENIED** without prejudice.

Plaintiffs' Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 4) is **DENIED** without prejudice.

---

[2] Plaintiffs state that, "[t]here was no time to confer with counsel for Defendants because the motion must be heard TODAY before any proceedings can continue[.]" (Doc. No 4 at PageID# 163).

17

Plaintiffs are cautioned that failure to comply with this Order by the above deadline (or to request an extension of the 30-day period for compliance before it expires) may result in dismissal of the Amended Complaint for failure to follow an Order of the Court. Fed. R. Civ. P. 41(b).

Plaintiffs are cautioned, as before, that failure to keep the Court apprised of any change in their address(es) of record may also result in dismissal of this case. M.D. Tenn. L.R. 41.01(b).

Resources for pro se litigants are available free of charge on the Court's website as well as by request to the Clerk's Office so long as the privilege is not abused.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE