**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE COLUMBIA DIVISION**

| | | |
|---|---|---|
| **JELAYNE BAKER and CHRISTOPHER BAKER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **NO. 1:26-cv-00034** |
| | ) | |
| **v.** | ) | **JUDGE CAMPBELL** |
| | ) | **MAGISTRATE JUDGE HOLMES** |
| **THE HONORABLE JUDGE J. LEE BAILEY, III,** *in his official capacity,* **et al.,**[1] | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

Plaintiffs Jelayne Baker ("Plaintiff J.B.") and Christopher Baker ("Plaintiff C.B."), residents of Glendale, Arizona, filed this pro se action under 42 U.S.C. § 1983, alleging violations of their civil rights. (Doc. No. 22). Pending before the Court is Plaintiffs' Expedited Second Amended Motion for Temporary Restraining Order and Preliminary Injunction ("Second Amended TRO & PI Motion") (Doc. No. 31).

## I. PROCEDURAL HISTORY

Plaintiffs commenced this case on April 13, 2026 by filing a Complaint (Doc. No. 1), an Application for Leave to Proceed In Forma Pauperis ("IFP Application") by Plaintiff J.B. (Doc. No. 2), and a Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 4). By Order entered on April 14, 2026, the Court noted the lack of an IFP application submitted by Plaintiff C.B., denied Plaintiff J.B.'s IFP Application (Doc. No. 2) without prejudice due to lack of sufficient information provided, ordered Plaintiff J.B. and Plaintiff C.B. to submit either the full civil filing fee or IFP applications, and noted that the Court could not consider the Motion for Temporary Restraining

[1] Odeneal and Tennessee Department of Children's Services were terminated by Memorandum and Order entered on June 26, 2026. (Doc. No. 21).

Order and Preliminary Injunction (Doc. No. 4) unless and until the filing fee was resolved. (Doc. No. 5). The Court ordered Plaintiffs to submit the required documents no later than 30 days of the entry of the Court's Order. (*Id.* at 2-3).

Prior to the deadline, Plaintiff J.B. timely filed an Amended IFP Application (Doc. No. 6) on April 15, 2026.

On April 23, 2026, the Court's Order of April 14, 2026 was returned via mail, and the envelope was marked "VAC." (Doc. Nos. 10 & 11). It appeared that Plaintiffs had failed to keep the Court apprised of their address as required by M.D. Tenn. L.R. 41.01(b).

On May 21, 2026, the Court noted Plaintiff C.B.'s failure to comply with the Court's Order of April 14, 2026, denied Plaintiff J.B.'s Amended IFP Application (Doc. No. 6) without prejudice, ordered Plaintiff C.B. to sign the Complaint, ordered both Plaintiffs to pay their portion of the civil filing fee, and ordered that both Plaintiffs provide the Court with their current mailing address. (Doc. No. 12 at 2-3). The Court ordered Plaintiffs to comply no later than 30 days of the date the Order was entered. (Doc. No. 12 at 3). The Court reminded Plaintiffs that the Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 4) could not be addressed until the resolution of the filing fee. (*Id.*).

Plaintiffs timely filed an Amended Complaint on May 24, 2026, signed by both Plaintiffs. (Doc. No. 13 at 13-14). On the same day, Plaintiffs also filed a Notice of Change of Address and Motion for Protective Order (Doc. No. 14); an Expedited Motion for Reconsideration (Doc. No. 15) of the Court's Order entered on May 21, 2026; and two IFP Applications, one by each Plaintiff (Doc. Nos. 16 & 17). On June 22, 2026, Plaintiffs filed an Emergency Motion for Status Regarding Pending Emergency Petition for Injunctive Relief and Expedited Motion for Reconsideration (Doc. No. 20).

On June 26, 2026, the Court entered a Memorandum and Order granting Plaintiffs' Emergency Motion for Status Regarding Pending Emergency Petition for Injunctive Relief and

Expedited Motion for Reconsideration (Doc. No. 20), granted in part and denied in part Plaintiffs' Expedited Motion for Reconsideration (Doc. No. 15), granted Plaintiffs' IFP Applications (Doc. Nos. 16 & 17), dismissed without prejudice Plaintiffs' 42 U.S.C. § 1983 claims against Defendants Stacie Odeneal ("Odeneal") and Tennessee Department of Children's Services, denied Plaintiffs' Motion for Protective Order (Doc. No. 14), and denied without prejudice Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 4) as procedurally noncompliant. (Doc. No. 21 at 17). As to the remaining Defendant, The Honorable Judge J. Lee Bailey, III ("Judge Bailey"), the Court ordered Plaintiffs to show cause why this case should not be dismissed under *Younger v. Harris*, 401 U.S. 37 (1971). (*Id.*). The Court ordered Plaintiffs to comply with the Court's Order no later than 30 days of the entry of the Order. (*Id.*).

On July 18, 2026, Plaintiffs filed an Amended Verified Complaint (Doc. No. 22) and "Memorandum in Support." (Doc. No. 23). It includes claims against Judge Bailey and adds claims against Judge Christopher Sockwell ("Judge Sockwell"), Jessica Sloan Elam ("Elam"), and Odeneal, despite Odeneal's dismissal on June 26, 2026. (Doc. No. 22 at 3-4). On the same day, both Plaintiffs filed an Affidavit (Doc. Nos. 24 & 25), an Amended Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 26), a "Memorandum in Support" (Doc. No. 27), a Response to Order to Show Cause (Doc. No. 28), and a Memorandum in Support of the Response (Doc. No. 29).

On July 22, 2026, the Court denied without prejudice the Amended Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 26) as procedurally noncompliant. (Doc. No. 30 at 2). The Court informed Plaintiffs that it would review their Response to Order to Show Cause and their Memorandum in Support thereof in due time. (*Id.*).

Plaintiffs later filed an Expedited Second Amended TRO & PI Motion (Doc. No. 31) and its accompanying Memorandum of Law in Support of the motion (Doc. No. 32). The Court will consider those submissions below.

## II. SECOND AMENDED TRO & PI MOTION (DOC. NO. 31)

Within the Second Amended TRO & PI Motion, Plaintiff requests injunctive relief against Defendants Judge Bailey, Judge Sockwell, Odeneal, and Elam.[2]

### A. Alleged Facts[3]

Plaintiffs' children were taken into state custody upon the initiation of a family court case in the Juvenile Court of Maury County, Tennessee with Judge Bailey presiding. (Doc. No. 31 at 9). The originally-assigned guardian ad litem, Elam, withdrew from the case and selected Odeneal to take over. (*Id.*). Elam gave Odeneal a summary of the case upon her becoming the guardian ad litem. (*Id.*).

Plaintiffs filed a formal disciplinary complaint against Odeneal with the Tennessee Board of Professional Responsibility on July 12, 2025, after Odeneal called in sick, but she was instead posting

---

[2] Plaintiffs ask this Court to (1) issue a temporary restraining order enjoining Defendants, as well as all others in active concert with them, from proceeding with the state court matters; (2) issue a preliminary injunction ending the Termination of Parental Rights proceedings in the Lawrence County Juvenile Court until the constitutional violations have been addressed, stay all underlying state court proceedings in Maury County Juvenile Court and Lawrence County Juvenile Court pending the resolution of this case, order Defendants to comply with all statutory service requirements of Tennessee, and vacate all orders in the state court proceedings that were entered without notice to Plaintiffs, including the case status order of September 29, 2026; (3) appoint an independent guardian ad litem for the underlying state court proceedings; (4) appoint counsel to represent Plaintiffs in the state court proceedings; (5) order that all unresolved motions filed by Plaintiffs in the state court proceedings be heard and decided within a reasonable time by an impartial judge; (6) order all pending matters before Judge Bailey be transferred to an unbiased judge; (7) order the state court to preserve the record of all proceedings, including ex parte communications, for review by the Court; (8) order the state court to provide Plaintiffs with a full and fair opportunity to present evidence and arguments on all pending motions before an impartial judge; (9) enter an order prohibiting Odeneal from engaging in further ex parte communications, social media posts, or any other conduct that could prejudice the proceedings or violate Plaintiffs' rights; (10) refer the allegations concerning the judges to the appropriate judicial oversight authorities for investigation; (11) refer the allegations pertaining to Odeneal to the appropriate licensing, disciplinary, or oversight authority for investigation; (12) award attorneys' fees and costs under 42 U.S.C. § 1988; and (13) grant such other and further relief that the Court deems appropriate. (Doc. No. 31 at 34-36).

[3] Many facts alleged in the Second Amended TRO & PI Motion and in the Amended Verified Complaint are duplicative. There are also additional facts alleged in the Second Amended TRO & PI Motion that recently occurred and, therefore, are not included within the Amended Verified Complaint. Those facts are flagged in footnote 4 below.

on social media about being on vacation. (*Id.* at 14). On August 5, 2025, Odeneal responded to the complaint, stating that she had filed to remove one of the children from Plaintiff J.B.'s legal custody and that she was investigating whether Plaintiff J.B. violated the law in adopting the child. (*Id.* at 15; Doc. No. 31-1 at 135). On January 5, 2026, the Tennessee Board of Professional Responsibility found that Odeneal violated the Rules of Professional Conduct. (Doc. No. 31 at 15). Nonetheless, she continued as the guardian ad litem. (*Id.* at 15).

Less than 24 hours before an adjudication hearing set in the Maury County Juvenile Court on April 9, 2026, Odeneal filed a termination of parental rights petition ("TPR petition") against Plaintiffs in the Juvenile Court of Lawrence County, Tennessee. (*Id.* at 9). Plaintiffs believe this was done to divest the Maury County Juvenile Court of jurisdiction and prevent Plaintiffs from having their day in court. (*Id.*). Plaintiffs were never "properly" served the TPR petition because the case number on the summons was unreadable. (*Id.* at 10).

Plaintiffs received the TPR petition and accompanying summons in mid-July 2026. (*Id.* at 11). Plaintiffs timely filed a response, a motion to dismiss or stay the TPR petition due to the pending federal court proceedings, and a motion for telephonic or virtual appearance with the Lawrence County Juvenile Court. (*Id.* at 11-12). Plaintiff J.B. contacted the Lawrence County Juvenile Court to ask about the status of the case, and she was told she would get information via mail. (*Id.* at 12). Plaintiffs received nothing until October 16, 2026, when Plaintiffs learned of an order by Judge Sockwell stating that a hearing was held on September 29, 2026, and Plaintiffs' motions to dismiss or stay the case and for telephonic or virtual appearance were denied for lack of prosecution. (*Id.* at 12-13). Judge Sockwell indicated that the matter could be set for trial. (*Id.* at 13). Plaintiffs insist they received no notice of the September 26, 2026 hearing. (*Id.*). Plaintiffs maintain that the court and

Odeneal were provided with Plaintiffs' correct mailing address, but Odeneal used a family member's address instead. (*Id.* at 14).[4]

Plaintiffs have not been appointed attorneys in the TPR case, despite believing they are entitled to such. (*Id.* at 15-16). Plaintiffs also allege other constitutional violations against Judge Bailey, stating that he refused to hear Plaintiff C.B. in hearings; directed other attorneys to discourage Plaintiff C.B. from speaking; failed to rule on motions; accommodated opposing counsel's tardiness; denied Plaintiffs a meaningful opportunity to be heard; entered a visitation order over Plaintiffs' objections; permitted Elam to recommend Odeneal as the next guardian ad litem; engaged in ex parte communications with the guardian ad litem; demonstrated bias; caused direct harm to Plaintiff J.B.'s employment status due to procedurally defective hearings; and emboldened opposing parties through bias, which contributed to an alleged physical assault of Plaintiff C.B. (*Id.* at 17-18).

**B. Request for Temporary Restraining Order and Preliminary Injunction**

1. <u>Procedural Requirements</u>

In this district, a movant seeking a temporary restraining order must comply with specific procedural requirements. First, "any request for a TRO" must be made by written motion "separate from the complaint." M.D. Tenn. L.R. 65.01(a). Second, because the movant bears the burden of justifying preliminary injunctive relief on the merits, *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 600 (6th Cir. 2014), a TRO motion must be accompanied by a memorandum of law and proposed order. M.D. Tenn. L.R. 65.01(b). Third, the motion for a TRO must be supported, at a minimum, by "an affidavit or a verified complaint." Fed. R. Civ. P. 65(b)(1)(A); M.D. Tenn. L.R. 65.01(b) (explaining that a motion for a TRO "must be accompanied by a separately filed affidavit or verified written complaint"). Finally, the moving party must certify in writing "any efforts made to give notice

[4] The facts contained in this paragraph are not included in the Amended Verified Complaint as these facts occurred after the Amended Verified Complaint's submission.

and why it should not be required." Fed. R. Civ. P. 65(b)(1)(B); *see also* M.D. Tenn. L.R. 65.01(c) (requiring "strict compliance" with this notice provision by pro se moving parties).

2. Legal Standard

"Temporary restraining orders and preliminary injunctions are extraordinary remedies which should be granted only if the movant carries his burden of proving that the circumstances clearly demand it." *Ciavone v. McKee*, No. 1:08cv771, 2009 WL 2096281, at *1 (W.D. Mich. July 10, 2009) (citing *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)). Those seeking a TRO or preliminary injunction must meet four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm in the absence of preliminary relief; (3) whether the injunctive relief will cause substantial harm to others; and (4) whether the public interest will be served by granting relief." *E.g., A&W X-Press, Inc. v. FCA US, LLC*, No. 21-1805, 2022 WL 2759872, at *3 (6th Cir. 2022) (citing *Ne. Ohio Coal. For Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)).

The Sixth Circuit has recently provided guidance regarding the four factors, stating, "[t]he preliminary injunction factors do not represent a list of 'prerequisites to be met,'" but rather are factors to be weighed. *NetChoice, LLC v. Skrmetti*, 191 F.4th 452, 462 (6th Cir. 2026) (quoting *PCC Airfoils, LLC v. Daugherty*, 176 F.4th 509, 513 (6th Cir. 2026)). The only time a court need not consider all factors is when "a movant utterly fails to satisfy one of the first two factors—likelihood of success on the merits or irreparable harm . . . ." *Id.* at 462-63.

"The party seeking the preliminary injunction bears the burden of justifying such relief[.]" *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012). Plaintiffs seeking a preliminary injunction may not merely rely on unsupported allegations but rather must come forward with more than "scant evidence" to substantiate their allegations. *See*, *e.g.*, *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 417 (6th Cir. 2014); *McNeilly*, 684 F.3d at 614 (upholding denial of preliminary injunction when

plaintiff made only a "small showing" of evidence); *Cameron v. Bouchard*, 815 F. App'x 978, 986 (6th Cir. 2020) (vacating preliminary injunction when plaintiffs made no evidentiary showing on some elements of their claim, but instead relied on mere allegations); *United States v. Certain Land Situated in City of Detroit*, No. 95-1118, 1996 WL 26915, at *1 n.1 (6th Cir. 1996) (affirming denial of a preliminary injunction where the district court relied on a lack of evidence to support speculative allegations); *Boulding v. Corr. Med. Servs.*, No. 1:06-cv-811, 2008 WL 2095390, at *1 (W.D. Mich. Feb. 11, 2008), *report and recommendation adopted,* 2008 WL 2095387 (W.D. Mich. May 15, 2008) ("Plaintiff did not marshal any evidence in support of his motion [for a preliminary injunction]. Plaintiff's unsupported allegations do not suffice."). The decision whether to grant a preliminary injunction is a matter within the discretion of the district court. *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 447 (6th Cir. 2009).

3. Analysis

a. Procedural Compliance

It appears Plaintiffs have satisfied all procedural requirements of M.D. Tenn. L.R. 65.01 as it pertains to the filing of their Second Amended TRO & PI Motion (Doc. No. 31). Plaintiffs filed a separate written motion (Doc. No. 31) with an accompanying memorandum of law (Doc. No. 32) and proposed order (Doc. No. 31-2), an Amended Verified Complaint (Doc. No. 22), and provided a certification in writing (Doc. No. 31 at 6-8, 37).

Having found Plaintiffs' submissions to be procedurally compliant, the Court moves next to a substantive analysis of the Second Amended TRO & PI Motion.

b. Irreparable Harm

The second of the four factors in a preliminary injunction determination, that being the consideration of irreparable harm absent injunctive relief, is "indispensable." *NetChoice*, 191 F.4th at 463 (quoting *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019)). When determining

whether the movant may suffer irreparable harm, the Court must ask "whether, without an injunction, a plaintiff will likely suffer harm *before* final judgment that cannot be remedied at final judgment[,]" such as "harm that is likely, not remediable at final judgment, and immediate." *Id.* (emphasis in original) (quoting *Fischer v. Thomas*, 78 F.4th 864, 868 (6th Cir. 2023)); *see also D.T.*, 942 F.3d at 327 ("[A]n injury 'must be both certain and immediate,' not 'speculative or theoretical'" when determining whether to issue a preliminary injunction.) (citation omitted).

Plaintiffs contend that, "[t]he ongoing separation from their children since October 2025 constitutes a continuing irreparable injury . . . [,]" and "[w]ithout an injunction, Plaintiffs face the imminent and permanent termination of their parental rights." (Doc. No. 32 at 7).

Plaintiffs' loss of time with their children during the pendency of the state court actions is time Plaintiffs cannot get back, which supports the conclusion that irreparable harm exists. *See Reid v. Lee*, 476 F. Supp. 3d 684, 708-09 (M.D. Tenn. Aug. 5, 2020). However, there is a long-standing concern by the state courts regarding the care, custody, and control of Plaintiffs' children, as evidenced by the state court's involvement, and this Court will not interfere with that involvement for the reasons set forth in section c below.

As it pertains to Plaintiffs' contention that the termination of their parental rights is "imminent," this contention is simply incorrect. While the Court agrees that the severance of parental ties to a child is irreparable, such is only irreparable in a circumstance where all remedies have been exhausted to no avail, thus making the chance of repairing the parental tie nonexistent. As best the Court can discern, there is no indication at this time that a trial is occurring or has occurred on the termination of parental rights petition or that a final decision will be made imminently as to that petition. Judge Sockwell simply stated that a hearing could be set on the matter. (Doc. No. 31 at 26). Therefore, it cannot be said that the harm is both "certain and immediate." *D.T.*, 942 F.3d at 327.

c. Likelihood of Success on the Merits

In the evaluation of alleged civil rights violations, "the likelihood of success on the merits often will be . . . determinative." *Thompson v. DeWine*, 976 F.3d 610, 615 (6th Cir. 2020) (per curiam) *cert. denied*, 593 U.S. 927, 141 S. Ct. 2512, 209 L.Ed.2d 547 (2021) (quoting *Obama for Am. v. Husted,* 697 F.3d 423, 436 (6th Cir. 2012)). In considering the likelihood of success on the merits, a court will determine whether that plaintiff is likely to prevail on the underlying claim.

As best the Court can discern, Plaintiffs contend that their due process rights under the Constitution were violated in (1) the improper appointment of Odeneal, the guardian ad litem in the state court proceedings; (2) Judge Bailey holding hearings without providing notice of said hearings to Plaintiffs; (3) Judge Bailey disposing of motions without providing notice to Plaintiffs of their review; (4) Judge Bailey failing to rule on "dispositive" motions; (5) the improper appointment of Odeneal, the guardian ad litem in the state court proceedings; (6) the state court's failure to appoint counsel; and (7) the failure to properly serve the petition for the termination of parental rights in Lawrence County Juvenile Court. The Court will consider this first element, the likelihood of success on the merits, separately as to each Defendant.

i. The Honorable Judge J. Lee Bailey, III

By Memorandum and Order of June 26, 2026, this Court held that, since the state court proceedings are ongoing, the case is subject to dismissal pursuant to the *Younger* abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971). (*See* Doc. No. 21). Considering Plaintiffs' pro se status, the Court ordered Plaintiffs to show cause why this case should not be dismissed under *Younger*. (*Id.* at 13). Plaintiffs timely filed their Response to Order to Show Cause (Doc. No. 28) and an accompanying Memorandum in Support (Doc. No. 29). Whether the Court chooses to abstain is an issue intertwined with a determination of the "likelihood of success on the merits." Thus, the Court will consider both issues below.

The doctrine of abstention pursuant to *Younger* "requires a federal court to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings." *O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008). Pursuant to *Middlesex*, the Court must abstain from exercising its jurisdiction if (1) there is an ongoing state proceeding, (2) that implicates important state interests, and (3) that provides an adequate opportunity to raise any relevant federal questions. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Because the state court proceedings at issue are akin to that of a criminal prosecution, (*see* Doc. No. 21 at 12-13) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013)), the Court must consider whether the *Middlesex* factors apply.

The analysis does not stop there, however, as there are three recognized exceptions to *Younger* abstention:

> (1) where "the state proceeding is motivated by a desire to harass or is conducted in bad faith," *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975); (2) where "[a] challenged statute is flagrantly and patently violative of express constitutional prohibitions," *Moore v. Sims*, 442 U.S. 415, 424 (1979) (quoting *Huffman*, 420 U.S. at 611); and (3) where there is "an extraordinarily pressing need for immediate federal equitable relief," *Kugler v. Helfant*, 421 U.S. 117, 125 (1975).

*Doe v. Lee*, No. 3:20-cv-00610, 2020 WL 4926607, at *3 (M.D. Tenn. Aug. 21, 2020). Both the Supreme Court and the Sixth Circuit have interpreted the exceptions narrowly, *id.* (citing *Gorenc v. City of Westland*, 72 F. App'x 336, 338-39 (6th Cir. 2003)), and the burden is on the plaintiff to demonstrate the existence of at least one of the exceptions to the *Younger* abstention doctrine. *Id.* (citing *Squire v. Coughlan*, 469 F.3d 551, 552 (6th Cir. 2006)).

Plaintiffs contend the third *Middlesex* factor is not met here, in that the state court proceedings do not provide an adequate opportunity for them to raise their federal constitutional claims. (Doc. No. 28 at 2; Doc. No. 32 at 9-11). Plaintiffs allege that "the state court forum has been fundamentally compromised," and their "constitutional rights are . . . actively violated." (Doc. No. 28 at 3). Plaintiffs contend that they cannot raise their federal constitutional claims when a judge refuses to rule on

motions[5], when they are given short notice of hearings, when they are prevented from presenting their evidence and testimony at those hearings, and when a judge demonstrates bias. (*Id.*; Doc. No. 32 at 10).

Plaintiffs, however, have not alleged that they raised their federal constitutional concerns to the state court by way of motions or otherwise. Furthermore, Plaintiffs have made no mention of having already exhausted their state remedies by, at the very least, utilizing the state appellate court for interlocutory grievances. *See Alexander v. Morgan*, 353 F. Supp. 3d 622, 628 (W.D. Ky. 2018) ("[F]ederalism concerns are greatly exacerbated because Alexander did not appeal the decision of the state court to the appellate courts of the Commonwealth of Kentucky.").

"[T]he burden of establishing the inadequacy of the state courts rests on the plaintiff[,]" and the courts must assume that the state courts provide an adequate forum. *Echoles v. City of Akron*, No. 5:25-cv-02650, 2026 WL 574962, at *2 (N.D. Ohio Mar. 2, 2026) (quoting *Meyers v. Franklin Cnty. Ct. of Common Pleas*, 23 F. App'x 201, 205 (6th Cir. 2001)). If a plaintiff "has not attempted to present [his or her] federal claims in the state court proceedings, the federal court should assume that state procedures will afford an adequate remedy in the absence of 'unambiguous authority to the contrary[,]'" (*Id.*) (quoting *Pennzoil Co. v. Texaco*, 481 U.S. 1, 15 (1987)), and the litigant "must first exhaust his state appellate remedies before seeking relief in the District Court." *Tindall v. Wayne Cnty. Friend of Ct.*, 269 F.3d 533, 539-40 (6th Cir. 2001) (quoting *Ballard v. Stanton*, 833 F.2d 593, 594 (6th Cir. 1987)). Plaintiffs have not met their burden, and the Court concludes the state court is an adequate forum in which Plaintiffs can raise their federal constitutional concerns.

Plaintiffs contend that, if the Court concludes the state court is an adequate forum, the bad faith and harassment exception applies. But Plaintiffs make only unsupported allegations that "[t]he

---

[5] There is no indication that Plaintiffs raised any federal constitutional issues in these motions.

Amended Complaint alleges a clear and disturbing pattern of bad faith conduct by state actors designed not to legitimately adjudicate parental rights, but to harass Plaintiffs and deny them their day in court." (Doc. No. 28 at 4). Plaintiffs cite persuasive authority, such as decisions by the Second Circuit and the District of Oregon (Doc. No. 31 at 23-24), and fail to cite the Sixth Circuit, the authoritative circuit in this case, which has held that the use of such an exception is "exceedingly rare, particularly where a plaintiff seeking to defeat an abstention argument has failed to avail himself first of state appellate processes before seeking relief in federal court[.]" *Tindall*, 269 F.3d at 539 (quoting *Ballard*, 833 F.2d at 594).

Although not explicitly stated, Plaintiffs' submissions imply an argument that there is "an extraordinarily pressing need for immediate federal equitable relief[.]" *Doe*, 2020 WL 4926607, at *3; (Doc. No. 28 at 5; Doc. No. 32 at 7, 10). That exception "is reserved for situations where 'the federal court concludes that the state proceedings are inadequate because there is no available state forum for the plaintiff's constitutional claims.'" *Id.* at *5 (emphasis omitted) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 107-08 (1975)).

The Court finds that the exception of bad faith and harassment does not apply, and neither does the exception of "an extraordinarily pressing need for immediate federal equitable relief[.]" *Doe*, 2020 WL 4926607, at *3. Plaintiffs do not argue that the remaining exception applies: that "[a] challenged statute is flagrantly and patently violative of express constitutional prohibitions," *id.*, and there is no implication within their submissions that this exception applies.

Because Plaintiffs have "failed to avail [themselves] first of state appellate processes before seeking relief in federal court," *Tindall*, 269 F.3d at 539, *Younger* abstention applies. And because Plaintiffs have failed to demonstrate "exceptional circumstances" that warrant a disregard of *Younger* abstention, *Younger*, 401 U.S. at 53-54, 91 S.Ct. 746, Plaintiffs cannot succeed on the merits of their 42 U.S.C. § 1983 claims against this Defendant.

ii. Judge Christopher Sockwell

Plaintiffs request declaratory and injunctive relief against Judge Sockwell. (Doc. No. 22 at 14-15; Doc. No. 31 at 34-36). Plaintiffs allege that Judge Sockwell held a hearing on September 29, 2026 without providing Plaintiffs notice of such, denied Plaintiffs' motions for lack of prosecution, and set the matter for trial. (Doc. No. 31 at 13). Plaintiffs ask that the Court enjoin Judge Sockwell from proceeding on the TPR petition or any other related state court matter pending the resolution of the instant case. (*Id.* at 34).

Plaintiffs' claims against this Defendant fail for the same reasons as explained in section i above. As a result, Plaintiffs cannot succeed on the merits as to this Defendant due to *Younger* abstention.

iii. Stacie Odeneal

Plaintiffs previously alleged violations of their civil rights pursuant to 42 U.S.C. § 1983 against Odeneal in their Amended Complaint. (Doc. No. 13 at 10-12). By Memorandum and Order entered on June 26, 2026, this Court dismissed the claims pursuant to 42 U.S.C. § 1983 against Odeneal because, as a guardian ad litem, she is not a state actor under 42 U.S.C. § 1983. (Doc. No. 21 at 13, 17). As a result, Odeneal was dismissed as a Defendant in this case. (*Id.* at 17).

Plaintiffs make similar allegations against Odeneal here, and they request declaratory and injunctive relief as to this Defendant as a result. In the Amended Verified Complaint, Plaintiffs sue Odeneal in her official and individual capacities, alleging she acted under color of state law and violated their procedural and substantive due process rights and First Amendment rights, and conspired to violate their civil rights. (Doc. No. 22 at 11-13). Plaintiffs are attempting to relitigate claims that have already been dismissed, which is prohibited by the law-of-the-case doctrine as explained below:

> As the doctrine goes, 'findings made at one stage in the litigation should not be reconsidered at subsequent stages of that same litigation.' *Burley*, 834 F.3d at 618. The

> doctrine does not mark a limit on a court's authority—courts are free to revisit their own rulings before final judgment—but is instead a recognition that for cases to reach resolution, issues cannot be argued and reargued without end. *See Messenger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912). In other words, the doctrine aims to 'maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit,' . . . Other doctrines govern the effects that final decisions have on later courts and cases to ensure consistency and order—doctrines such as stare decisis, res judicata, and the mandate rule. The law-of-the-case doctrine does not need to do that work too.

*Edmonds v. Smith*, 922 F.3d 737, 739-40 (6th Cir. 2019).

The Court concludes that the law-of-the-case doctrine applies. Plaintiffs cannot now file the same claims against the same Defendant in hope of achieving a different result. For this reason, Plaintiffs cannot succeed on the merits as to this Defendant.

iv. <u>Jessica Sloan Elam</u>

It is not clear whether Plaintiffs seek declaratory and/or injunctive relief as to Defendant Elam. Although Elam is not explicitly named as one against whom relief is requested in the Second Amended TRO & PI Motion (Doc. No. 31 at 34-36), she is listed as a party in the Amended Verified Complaint (Doc. No. 22 at 4), Plaintiffs make factual assertions against her in the Second Amended TRO & PI Motion (Doc. No. 31 at 9, 17, 31), and Plaintiffs ask for injunctive relief from Bailey, Sockwell, and Odeneal, as well as "all persons in active concert with them" (*Id.* at 34).

To the extent that Plaintiffs request such relief against Defendant Elam within the Second Amended TRO & PI Motion, the Court will consider the Plaintiffs' potential likelihood of success on the merits as to this Defendant.

As best the Court can discern, Plaintiffs allege violations of their civil rights pursuant to 42 U.S.C. § 1983 against Defendant Elam. (Doc. No. 22 at 11-13). Plaintiffs state that, "[t]he pattern of abuse began with prior GAL Jessica Elam, who, upon withdrawing, improperly selected Defendant Odeneal as her successor and provided her with a biased, one-sided narrative, tainting the process from the start." (Doc. No. 31 at 9).

42 U.S.C. § 1983 provides a cause of action against all people who, under color of state law, deprive any person of any right secured by the United States Constitution or federal law. To state a colorable Section 1983 claim, a plaintiff must allege: (1) "the deprivation of a right secured by the Constitution or laws of the United States" and (2) "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (quoting *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995)). If either element is absent, the Section 1983 claim has not been properly pleaded. *Kissinger v. Mahoning Cnty. Republican Party*, 677 F. Supp. 3d 716, 724 (N.D. Ohio June 16, 2023) (citing *Lausin v. Bishko*, 727 F. Supp. 2d 610, 625 (N.D. Ohio July 15, 2010)). In that Order, the Court held that guardian ad litems are not state actors. *Bracey v. Barbour*, No. 3:12-cv-629, 2012 WL 2395171, at *8 (M.D. Tenn. June 25, 2012) (citing *Long v. Pend Oreille Cnty. Sheriff's Dep't*, 385 F. App'x 641, 642 (9th Cir. 2010) (holding that a guardian ad litem was not a state actor for the purposes of Section 1983)) (collecting cases).

Because 42 U.S.C. § 1983 provides a cause of action against those acting under color of state law, and because Defendant Elam is not a state actor under Section 1983, Plaintiffs cannot succeed on the merits as to this Defendant.

d. <u>Substantial Harm to Others and Public Interest</u>

Lastly, the Court considers "whether the injunctive relief will cause substantial harm to others" and "whether the public interest will be served by granting relief." *A&W X-Press, Inc.*, 2022 WL 2759872, at *3 (citing *Ne. Ohio Coal. For Homeless*, 467 F.3d at 1009).

Plaintiffs contend that "[t]he only 'harm' to Defendants from an injunction is the requirement that they comply with the Constitution before proceeding . . . ." (Doc. No. 31 at 27-28). Of concern, however, is the principle of comity, "that is, a proper respect for state functions . . . a continuance of the belief that the National Government will fare best if the States and their institutions are left free

to perform their separate functions in their separate ways[,]" *Younger*, 401 U.S. at 44, which risks being undermined upon a federal court's interference with state court proceedings.

As for the consideration of the public's interest, it is within the public's interest to protect a parent's fundamental right to the care, custody, and control of their children. *See Troxel v. Granville,* 530 U.S. 57, 57 (2000) (citing *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)). However, the state may interfere with the purpose of protecting a child if the situation demands as much. *See Troxel*, 530 U.S. at 68.

It is also within the public's interest that a litigant's constitutional rights are protected within state court proceedings. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 556 (1992) ("Vindicating the public interest (including the public interest in Government observance of the Constitution and laws) is the function of [the government].") (emphasis omitted)). Nevertheless, Plaintiffs can have their federal constitutional rights heard on the state court level as explained in section c above.

4. <u>Conclusion</u>

The Court has considered the time Plaintiffs continue to lose with their children during the pendency of the state court proceedings, as well as the public's interest in the protection of a parent's fundamental liberty interest in the care, custody, and control of their children and the protection of a litigant's constitutional rights within state court proceedings. These considerations, however, do not entitle Plaintiffs to a temporary restraining order or preliminary injunction at this juncture.

A state may interfere with a parent's care, custody, and control of their child when a situation necessitates it, and the interruption of such by the federal courts undermines the principle of comity that exists for the betterment of the relationship between the state and federal courts and their individual functions. Furthermore, the potential termination of Plaintiffs' parental rights is just that: potential. It is not "certain or immediate" at this juncture. The Court acknowledges the present threat of the potential loss of parental rights due to the filing of the termination of parental rights petition.

However, the option for Plaintiffs to utilize the state courts as it pertains to their constitutional concerns, as well as those that are interlocutory in nature, remains. Lastly, and most dispositively, Plaintiffs cannot succeed on the merits as to their 42 U.S.C. § 1983 claims against Bailey, Sockwell, Odeneal, and Elam for the reasons stated above, and that finding is most "determinative" here. *Thompson*, 976 F.3d at 615 (quoting *Obama for Am.,* 697 F.3d at 436).

After "balancing . . . the four [factors] in light of one another[,]" *NetChoice, LLC*, 191 F.4th at 463, the Second Amended TRO & PI Motion (Doc. No. 31) will be denied.

## III. INITIAL REVIEW OF IN FORMA PAUPERIS COMPLAINT

Having considered the Second Amended TRO & PI Motion (Doc. No. 31), the Court moves now to Plaintiffs' Response to Order to Show Cause (Doc. No. 28) and the required review of the Amended Verified Complaint. (Doc. No. 22).

### A. 28 U.S.C. § 1915(e)(2)(B) Review

When a plaintiff is proceeding in forma pauperis, the Court must conduct an initial review and dismiss the in forma pauperis complaint if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also Ongori v. Hawkins*, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e)."). Review for whether a complaint states a claim upon which relief may be granted asks whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although pro se pleadings must be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the plaintiff must still "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged," *Iqbal*, 556 U.S. at 678, upon "view[ing] the complaint in the light most favorable to the plaintiff[.]" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009).

**B. Procedural History**

On June 26, 2026, the Court conducted an initial review of the Amended Complaint (Doc. No. 13). (Doc. No. 21 at 5-14). As to Plaintiffs' claims against Judge Bailey, the Court found that it has subject matter jurisdiction on the basis that Plaintiffs request relief that is available under *Ex parte Young*, an exception to Eleventh Amendment immunity. (*Id.* at 11). The Court continued its analysis by considering the doctrine of abstention pursuant to *Younger v. Harris*. The Court found that the state court proceedings are akin to that of a criminal prosecution, satisfying one of the three circumstances discussed in *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013). Next, the Court considered the three factors from *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) to determine whether the Court must abstain. (Doc. No. 21 at 13). The Court considered whether (1) there is an ongoing state proceeding, (2) that implicates important state interests, and (3) that provides an adequate opportunity to raise any relevant federal questions. *Middlesex*, 457 U.S. at 432. The Court determined that the state court proceedings are ongoing, necessitating the Court's abstention. (Doc. No. 21 at 13). Considering Plaintiffs' pro se status, the Court ordered them to show cause why this case should not be dismissed under *Younger*. (*Id*). The Court ordered Plaintiffs to comply no later than 30 days of the entry of the Memorandum and Order. (*Id.* at 17).

Plaintiffs complied with the Court's Order in that they filed a timely Response to Order to Show Cause (Doc. No. 28) and a Memorandum in Support (Doc. No. 29). In their Response, Plaintiffs first argue that "the ongoing state court proceedings do not provide an adequate or meaningful opportunity for Plaintiffs to raise their federal constitutional claims due to a persistent pattern of procedural manipulation and judicial bias." (Doc. No. 28 at 1). Next, Plaintiffs argue that the state proceedings are being conducted in bad faith for the purpose of harassment, thereby necessitating the

application of the bad faith exception to *Younger* abstention. (*Id.*). Lastly, Plaintiffs argue that, "as a direct result of [the] bad-faith proceedings, Plaintiffs are suffering great, immediate, and irreparable injury to their fundamental parental rights," which is an injury that, according to Plaintiffs, cannot be remedied in state court. (*Id.* at 1-2).

**C. Alleged Facts**

The below facts are presumed true for purposes of the required screening of the Amended Verified Complaint.

In August 2022, Judge Bailey granted temporary custody of Plaintiffs' children to the paternal grandmother. (Doc. No. 22 at 4). Judge Bailey refused to hear from Plaintiff C.B. at the hearing due to him arriving late, although Plaintiff C.B. maintains an incorrect hearing time was listed on the summons. (*Id.*). Judge Bailey directed attorneys in the courtroom at the time to discourage Plaintiff C.B. from speaking. (*Id.*).

Plaintiffs retained private counsel and took part in multiple mediation sessions, which caused Plaintiffs to incur substantial fees and emotional strain. (*Id.*).

Plaintiffs filed a motion to dismiss the temporary custody order, for which there was a hearing in October 2024. (*Id.*). The petitioner (the grandmother) and her attorney failed to appear, and Judge Bailey delayed the hearing until approximately 11:00 a.m. (*Id.*). Judge Bailey restored sole custody of the children to Plaintiff C.B. (*Id.* at 4-5). The grandmother appealed the dismissal of the temporary custody order in November 2024. (*Id.* at 5). Plaintiffs filed a motion to dismiss for lack of jurisdictional timeliness, and Judge Bailey has yet to rule on it. (*Id.*). Judge Bailey has also failed to rule on multiple other motions Plaintiffs have filed in the same case. (*Id.*).

Jessica Francis, the children's aunt, filed a visitation petition, which Plaintiffs moved to dismiss. (*Id.*). Judge Bailey has yet to rule on that motion as well. (*Id.*). In January 2025, Jessica Francis "attempted to circumvent Judge Bailey's authority" by filing an Emergency Ex Parte Petition,

and Judge Bailey denied the petition. (*Id.*). Jessica Francis then filed the same petition in front of a different judge in a different court, and the petition was initially granted. (*Id.*). This order was then vacated, and the matter was referred back to Judge Bailey. (*Id.*). Judge Bailey has not addressed Jessica Francis's conduct. (*Id.*).

In March 2025, Judge Bailey entered a visitation order despite Plaintiffs' objections that no valid petition supported that order and proper service was lacking, and he told Plaintiffs they could appeal the order. (*Id.*). Judge Bailey also allowed Elam, the original guardian ad litem, to withdraw from the case and be replaced by Odeneal. (*Id.* at 6). Elam informed Odeneal about the facts of the case rather than Judge Bailey appointing a new guardian ad litem who could conduct their own unbiased review of the case. (*Id.*).

Odneal posted confidential case information on social media, and Plaintiffs filed a complaint regarding such. (*Id.*). Odeneal then admitted in a sworn response that she was actively trying to "undo the adoption."[6] (*Id.* at 11). The Tennessee Board of Professional Responsibility determined that Odeneal violated ethical rules. (*Id.* at 6, 11).

In June 2025, Judge Bailey ordered the removal of one of the children from Plaintiffs' care after a hearing that was held for which Plaintiffs had no opportunity to prepare or present physical evidence. (*Id.*). Plaintiffs learned of the hearing five minutes prior to its start. (*Id.*).

An adjudication hearing scheduled for August 2025 was cancelled due to Odeneal's alleged illness, but Plaintiffs observed social media posts of Odeneal showing she was "at the Tennessee River, demonstrating the falsity of her claim of illness . . . ." (*Id.*). The hearing was rescheduled for September 2025, within which Judge Bailey "demonstrated clear and explicit bias" by praising the

---

[6] Plaintiffs do not direct the Court to the exhibit that discusses this alleged fact. However, upon review of the record, it appears that Odeneal wrote to the Tennessee Board of Professional Responsibility, stating she was "currently investigating whether [Plaintiff J.B.] has violated the law in securing the adoption of [Odeneal's] client." (Doc. No. 22-1 at 55).

grandmother for her care of the children and stated that he knew she would "never do the things she was accused of." (*Id.* at 6-7). Judge Bailey said he would "probably get in trouble" for what he said and thanked the grandmother for being "wonderful." (*Id.* at 7). Plaintiffs were unable to present evidence, and the adjudication did not proceed. (*Id.*).

Odeneal filed a Dependency and Neglect petition in October 2025, and both of Plaintiffs' children were removed from the home. (*Id.*). At the time of the filing of the Amended Verified Complaint, Plaintiffs had yet to be served with the petition. (*Id.*). Plaintiffs have not been able to see the children since their removal. (*Id.*).

In November 2025, a hearing was held of which Plaintiffs were not given adequate notice, and they were unable to meaningfully prepare for it as a result. (*Id.*).

An adjudication hearing was set for April 2026. (*Id.*). Plaintiffs arrived with their attorney and were prepared to participate. (*Id.*). Odeneal arrived and asked that all attorneys have a private conference with Judge Bailey. (*Id.*). After approximately 20 minutes, Plaintiffs were informed by their attorney that the adjudication hearing would not take place, and this was because Odeneal filed a termination of parental rights petition in Lawrence County just the night before. (*Id.*).

Plaintiff J.B.'s employment has been affected by Judge Bailey's failure to rule on pending motions and the repeated court hearings, threatening the family's financial security. (*Id.* at 8). Plaintiff C.B. was violently attacked at his home by the spouse of Jessica Francis as a result of Judge Bailey's bias and failure to rule on pending motions, emboldening the opposing parties. (*Id.*).

Judge Sockwell, the judge presiding over the termination of parental rights case in Lawrence County, held a hearing on the petition despite having notice of the instant case in front of this Court.

(*Id.* at 10). Plaintiffs were never served with the termination of parental rights petition or a summons for the hearing. (*Id.*).[7]

**D. Analysis**

1. <u>Stacie Odeneal and Jessica Sloan Elam</u>

a. <u>Stacie Odeneal</u>

Here, the Court incorporates its analysis both from its Memorandum and Order of June 26, 2026 and from section iii above. As a result, Plaintiffs' 42 U.S.C. § 1983 claims against Odeneal in her official capacity will be dismissed with prejudice.

Furthermore, it is unclear what claims Plaintiffs allege against Odeneal in her individual capacity, if any, and the Court will not create those claims for Plaintiffs. *See Frazier v. Mich.*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. 2000) (requiring allegations of personal involvement against each defendant). To the extent the Amended Verified Complaint asserts any such claims, they will be dismissed without prejudice.

b. <u>Jessica Sloan Elam</u>

Similar to the claims brought against Odeneal, Plaintiffs allege 42 U.S.C. § 1983 claims against Elam, the original guardian ad litem in the state court case under Judge Bailey. (Doc. No. 22 at 11-13). She is sued in her official and individual capacities. (*Id.* at 4). Plaintiffs' claims against Elam fail for the same reasons as those given for Odeneal in the Court's Memorandum and Order of

[7] Of note, this statement is contradicted by the later-filed Second Amended TRO & PI Motion. Per that submission, Plaintiffs were served with the TPR petition and summons in mid-July. (Doc. No. 31 at 11). It appears Plaintiffs received both documents shortly after the filing of the Amended Verified Complaint.

June 26, 2026 (Doc. No. 21) and as discussed in section iv above. Therefore, Plaintiffs' 42 U.S.C. § 1983 claims against Elam in her official capacity will be dismissed with prejudice.

Plaintiffs fail to make clear any individual capacity claims they make against Elam. The Court will not create those claims for Plaintiffs. *See Frazier v. Mich.*, 41 F. App'x at 764 (6th Cir. 2002); *Griffin v. Montgomery*, 2000 WL 1800569, at *2. To the extent the Amended Verified Complaint asserts any such claims, they will be dismissed without prejudice.

2. The Honorable Judge J. Lee Bailey, III and Judge Christopher Sockwell

Although the Court may, at first glance, have subject matter jurisdiction over Plaintiffs' claims against Judge Bailey and Judge Sockwell because Plaintiffs request prospective injunctive relief as to both Defendants, Plaintiffs' underlying state court proceedings are ongoing and, as discussed *supra* at 12, the Court considers the state court to be an adequate forum in which Plaintiffs can raise their federal constitutional claims. Additionally, no *Younger* exception applies. Therefore, the Court must abstain pursuant to *Younger* because exercising jurisdiction over Plaintiffs' remaining claims and Defendants would cause this Court to sit as an appeals court over the decisions of the state court. That is far from the correct province of this Court. *Alexander*, 353 F. Supp. 3d at 629.

Having determined that abstention is appropriate, the Court must next decide whether to stay the federal action while the state action remains pending or, in the alternative, dismiss Plaintiffs' claims.

Federal courts generally favor staying the federal proceedings over dismissing them in cases involving Section 1983 claims for damages in which the federal court determines that the doctrine of *Younger* abstention applies. *See Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1075-76 (6th Cir. 1998); *Gilbertson v. Albright*, 381 F.3d 965, 984 (9th Cir. 2004). Here, Plaintiffs request only declaratory and injunctive relief, not damages. (Doc. No. 22 at 14-15). Because the Court has found

that abstention is appropriate as to the remaining claims against the remaining Defendants, Judge Bailey and Judge Sockwell, this case will be dismissed.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Expedited Second Amended Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 31) is **DENIED**.

The Court has conducted the required screening of the Amended Verified Complaint (Doc. No. 22) and, in doing so, considered Plaintiffs' Response to Order to Show Cause (Doc. No. 28). Based on the reasons set forth herein, the Court finds:

Plaintiffs' 42 U.S.C. § 1983 claims against Odeneal in her official capacity are **DISMISSED** with prejudice pursuant to the law-of-the-case doctrine.

Plaintiffs' 42 U.S.C. § 1983 claims against Elam in her official capacity are **DISMISSED** with prejudice.

Because it is unclear whether Plaintiffs allege Section 1983 claims against Odeneal and Elam in their individual capacities, any such claims are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

The Court holds that it must abstain pursuant to *Younger* as to the remaining 42 U.S.C. § 1983 claims against Judge Bailey and Judge Sockwell. Therefore, this case is **DISMISSED**.

This is the final Order denying all relief in this case. The clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b).

It is so **ORDERED**.

William L. Campbell Jr.
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE